**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| LINDA ARSLANIAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CARECLOUD, INC. and CARECLOUD HEALTH, INC.,<br><br>Defendants. | **Case No.:**<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Linda Arslanian ("Plaintiff"), on behalf of all others similarly situated, by and through her undersigned counsel, brings this Class Action Complaint against CareCloud, Inc. ("CareCloud") and CareCloud Health, Inc. ("CareCloud Health, and collectively, "Defendants"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## INTRODUCTION

1. Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted Defendants with sensitive Personally Identifiable Information ("PII")[1] and Protected Health Information ("PHI") (collectively, "Private Information") that was impacted in a data breach (the "Data Breach" or the "Breach").

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

2. Plaintiff's claims arise from Defendants failure to properly secure and safeguard Private Information that was entrusted to them and their accompanying responsibility to store and transfer that information.

3. This is a "hub-and-spoke" data breach, where Defendants, the "hub," process and maintain data for numerous clients, the "spokes."

4. Defendant CloudCare Health is an American healthcare technology firm providing cloud-based software and services to medical practices and health systems, including electronic health records, practice management, billing and revenue cycle solutions, with over 40,000 providers on its platform (hereinafter, the "Clients"). Defendant CloudCare Health is a subsidiary of Defendant CloudCare.

5. Defendants had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on affirmative representations to Plaintiff and Class Members, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

6. On March 16, 2026, Defendant CloudCare Health experienced a temporary network disruption in its IT Network that partially impacted the functionality and data access to one of its six electronic health record environments for approximately eight hours.[2]

7. Upon discovery of the Data Breach, Defendants launched an investigation to determine the nature and scope of the Data Breach.[3]

8. Upon information and belief, as a result of the Data Breach, Plaintiff and Class Members sensitive Private Information was exposed.

9. Defendants failed to take precautions designed to keep individuals' Private Information secure.

---

[2] https://www.sec.gov/Archives/edgar/data/1582982/000149315226013239/form8-k.htm (last visited April 1, 2026).
[3] *Id.*

10. Defendants owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information collected safe and secure from unauthorized access. Defendants solicited, collected, used, and derived a benefit from the Private Information, yet breached their duty by failing to implement or maintain adequate security practices.

11. Upon information and belief, the Private Information compromised in the Data Breach contained highly sensitive patient data, representing a gold mine for data thieves.

12. Armed with the Private Information accessed in the Data Breach (and a head start), data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, and giving false information to police during an arrest.

13. Plaintiff and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering, ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, the loss of the benefit of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

14. Plaintiff brings this class action lawsuit to address Defendants inadequate safeguarding of Class Members' Private Information that it collected and maintained on behalf of Clients, and their failure to provide timely and adequate notice to Clients and their affected patients, including Plaintiff and Class Members, of the Breach and the types of information unlawfully accessed.

15. The potential for improper disclosure and theft of Plaintiff and Class Members' Private Information was a known risk to Defendants, and thus Defendants were on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

16. Upon information and belief, Defendants failed to properly monitor and implement security practices with regard to the computer network and systems that housed the

Private Information. Had Defendants properly monitored their IT Networks, they would have discovered the Breach sooner.

17. Plaintiff and Class Members' identities are now at risk because of Defendants negligent conduct as the Private Information that Defendants collected and maintained on behalf of Clients is now in the hands of data thieves and other unauthorized third parties.

18. Plaintiff seeks to remedy these harms on behalf of herself, and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

## PARTIES

19. Plaintiff is a citizen and resident of Carlsbad, California.

20. Defendant CareCloud is a corporation that maintains its principal place of business at 7 Clyde Road, Somerset, New Jersey, 08873.

21. Defendant CareCloud Health is a corporation that maintains its principal place of business at 5200 Blue Lagoon Drive, Suite 900, Miami, Florida, 33126.

## JURISDICTION AND VENUE

22. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is more than 100 and at least one member of the Class defined below is a citizen of a different state that is diverse from Defendants citizenship, including Plaintiff. Thus, minimal diversity exists under 28 U.S.C. § 1332 (d) (2) (A).

23. This Court has personal jurisdiction over Defendants because Defendants regularly conduct substantial business within this District, and their contacts with this District are continuous and systematic, rendering it essentially at home here.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant CloudCare Health resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Background on Defendant

25. Defendant CloudCare Health is an American healthcare technology firm providing cloud-based software and services to medical practices and health systems, including electronic health records, practice management, billing and revenue cycle solutions, with over 40,000 providers on its platform. Defendant CloudCare Health is a subsidiary of Defendant CloudCare.

26. As a condition of doing business, Defendants require that Clients entrust them with highly sensitive personal information belonging to their patients. In the ordinary course of receiving services, Plaintiff and Class Members were required to provide their Private Information to Defendants.

27. Upon information and belief, Defendants made promises and representations to individuals', including Plaintiff and Class Members, that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained.

28. Plaintiff and Class Members provided their Private Information to Defendants with the reasonable expectation and on the mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

29. As a result of collecting and storing the Private Information of Plaintiff and Class Members for their own financial benefit, Defendants had a continuous duty to adopt and employ reasonable measures to protect Plaintiff and the Class Members' Private Information from disclosure to third parties.

**B. The Data Breach**

30. On March 16, 2026, Defendant CloudCare Health experienced a temporary network disruption in its IT Network that partially impacted the functionality and data access to one of its six electronic health record environments for approximately eight hours.[4]

31. Upon discovery of the Data Breach, Defendants launched an investigation to determine the nature and scope of the Data Breach.[5]

32. Upon information and belief, as a result of the Data Breach, Plaintiff and Class Members sensitive Private Information was exposed.

33. Defendants failed to take precautions designed to keep individuals' Private Information secure.

34. Defendants had obligations created by the FTC Act, HIPAA, contract, common law, and industry standards to keep Plaintiff and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

35. Defendants did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, causing the exposure of Private Information, such as encrypting the information or deleting it when it is no longer needed.

36. The Data Breach resulted in unauthorized third-party accessing and acquiring files containing unencrypted Private Information of Plaintiff and Class Members. Plaintiff and Class Members' Private Information was accessed and stolen in the Data Breach.

37. Upon information and belief, Plaintiff' Private Information, and that of Class Members, was subsequently published on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

---

[4] https://www.sec.gov/Archives/edgar/data/1582982/000149315226013239/form8-k.htm (last visited April 21, 2026).
[5] *Id.*

38. Defendants failed to take precautions designed to keep individuals' Private Information secure.

39. Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

**C. Defendants Failure to Prevent, Identify, and Timely Report the Data Breach**

40. Defendants failed to take adequate measures to protect their computer systems against unauthorized access.

41. The Private Information that Defendants allowed to be exposed in the Data Breach is the type of private information that Defendants knew or should have known would be the target of cyberattacks.

42. Despite their own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices,[6] Defendants failed to disclose that their systems and security practices were inadequate to reasonably safeguard their past and present clients or customers Private Information.

43. The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[7] Immediate notification of a Data Breach is critical so that those impacted can take measures to protect themselves.

**D. The Harm Caused by the Data Breach Now and Going Forward**

44. Victims of data breaches are susceptible to becoming victims of identity theft. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201(9). When "identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[8]

[6] *Protecting Personal Information: A Guide for Business,* FED. TRADE COMM'N (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business
[7] *Id.*
[8] *Prevention and Preparedness*, New York State Police, https://troopers.ny.gov/prevention-and-preparedness

45. The type of data that may have been accessed and compromised here can be used to perpetrate fraud and identity theft.

46. Plaintiff and Class Members face a substantial risk of identity theft given that their Private Information was compromised in the Data Breach.

47. Stolen Private Information is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal their identities and online activity.

48. When malicious actors infiltrate companies and copy and exfiltrate the Private Information that those companies store, the stolen information often ends up on the dark web where malicious actors buy and sell that information for profit.[9]

49. For example, when the U.S. Department of Justice announced their seizure of AlphaBay—the largest online "dark market"—in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity."[10] Marketplaces similar to the now-defunct AlphaBay continue to be "awash with [PII] belonging to victims from countries all over the world."[11]

50. PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[12] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[13]

---

[9] *Shining a Light on the Dark Web with Identity Monitoring*, IDENTITYFORCE (Dec. 28, 2020) https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring

[10] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR (April 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/

[11] *Id.*

[12] *Id.*

[13] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015) https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft

51. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.[14]

52. Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[15] Defendants did not rapidly report to Plaintiff and Class Members that their Private Information had been stolen.

53. As a result of the Data Breach, the Private Information of Plaintiff and Class Members has been exposed to criminals for misuse. The injuries suffered by Plaintiff and Class Members, or likely to be suffered as a direct result of Defendants Data Breach, include: (a) theft of their Private Information; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this Breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendants with the mutual understanding that Defendants would safeguard their Private Information against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their Private Information, which remains in the possession of Defendants, and which is subject to further injurious breaches so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiff and Class Members' Private Information.

---

[14] *2019 Internet Crime Report Released*, FBI (Feb. 11, 2020) https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120#:~:text=IC3%20received%20467%2C361%20complaints%20in,%2Ddelivery%20scams%2C%20and%20extortion

[15] *Id.*

54. In addition to a remedy for economic harm, Plaintiff and Class Members maintain an interest in ensuring that their Private Information is secure, remains secure, and is not subject to further misappropriation and theft.

55. Defendants disregarded the rights of Plaintiff and Class Members by (a) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that their network servers were protected against unauthorized intrusions; (b) failing to disclose that it did not have adequately robust security protocols and training practices in place to safeguard Plaintiff and Class Members' Private Information; (c) failing to take standard and reasonably available steps to prevent the Data Breach; (d) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (e) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

56. The actual and adverse effects to Plaintiff and Class Members, including the imminent, immediate, and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly or proximately caused by Defendants wrongful actions and/or inaction and the resulting Data Breach require Plaintiff and Class Members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiff and other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

***Plaintiff's Experience***

57. Plaintiff is a patient of one of Defendants Client's.

58. As a condition of obtaining medical services, Plaintiff was required to provide Defendants and their Client with her Private Information.

59. Defendants were in possession of Plaintiff's Private Information before, during, and after the Data Breach.

60. Plaintiff reasonably understood and expected that Defendants would safeguard her Private Information and timely and adequately notify her in the event of a data breach. Plaintiff Goodrum would not have allowed Defendants, or anyone in Defendants position, to maintain her Private Information if she believed that Defendants would fail to implement reasonable and industry standard practices to safeguard that information from unauthorized access.

61. Plaintiff greatly values his privacy and Private Information and takes reasonable steps to maintain the confidentiality of her Private Information. Plaintiff is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

62. Plaintiff stores any and all documents containing Private Information in a secure location and destroys any documents he receives in the mail that contain any Private Information or that may contain any information that could otherwise be used to compromise her identity and credit card accounts.

63. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

64. As a result of the Data Breach, Plaintiff has spent several hours researching the Data Breach, reviewing her bank accounts, monitoring her credit report, changing her passwords and other necessary mitigation efforts. This is valuable time that Plaintiff would have spent on other activities, including but not limited to work and/or recreation.

65. As a consequence of and following the Data Breach, Plaintiff has experienced a significant increase in spam calls, text messages, and emails, evidencing misuse of her Private Information.

66. The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress.

67. Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff will continue to be at present and continued increased risk of identity theft and fraud for years to come.

68. Plaintiff has a continuing interest in ensuring that her Private Information, which upon information and belief, remains in Defendants possession, is protected and safeguarded from future breaches.

69. As a direct and traceable result of the Data Breach, Plaintiff suffered actual injury and damages after her Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring her accounts and credit reports for fraudulent activity; (b) loss of privacy due to her Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendants did not adequately protect her Private Information; (d) emotional distress because identity thieves now possess her sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private Information has been stolen and likely published on the dark web; (f) diminution in the value of his Private Information, a form of intangible property that Defendants obtained from Plaintiff and (g) other economic and non-economic harm.

## CLASS ALLEGATIONS

70. Plaintiff brings this class action, individually and on behalf of the following Classes:

> Nationwide Class: All individuals whose Private Information was accessed and/or acquired by an unauthorized party in the Data Breach (the "Nationwide Class").
>
> California Subclass: All individuals who reside in California whose Private Information was accessed and/or acquired by an unauthorized party in the Data Breach (the "California Subclass").

71. Specifically excluded from the Classes are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants,

partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

72. Plaintiff reserve the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

73. This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

74. Numerosity: The Class is so numerous that joinder of all Class Members is impracticable. Upon information and belief, Plaintiff estimates that the Class is comprised of thousands of members, if not more. The Class is sufficiently numerous to warrant certification.

75. Typicality of Claims: Plaintiff claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, had her Private Information compromised as a result of the Data Breach. Plaintiff is a member of the Class, and her claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff is similar to that suffered by all other Class Members which was caused by the same misconduct by Defendants.

76. Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

77. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendants will likely continue their wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for their wrongdoing as asserted herein.

78. Predominant Common Questions: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

a. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

b. Whether Defendants data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

c. Whether Defendants storage of Plaintiff and Class Member's Private Information was done in a negligent manner;

d. Whether Defendants had a duty to protect and safeguard Plaintiff and Class Members' Private Information;

e. Whether Defendants conduct was negligent;

f. Whether Defendants conduct violated Plaintiff and Class Members' privacy;

g. Whether Defendants took sufficient steps to individuals' Private Information;

h. Whether Defendants were unjustly enriched; and

i. The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

79. Information concerning Defendants policies are available from Defendants records.

80. Plaintiff know of no difficulty which will be encountered in the management of this litigation which would preclude their maintenance as a class action.

81. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendants. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

82. Given that Defendants have not indicated any changes to their conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

**COUNT I**
**NEGLIGENCE**
**(On behalf of Plaintiff and the Nationwide Class)**

83. Plaintiff restates and realleges all of the allegations stated above as if fully set forth herein.

84. Defendants knowingly collected, possessed, and maintained Plaintiff and Class Members' Private Information, and therefore had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

85. Defendants duty also included a responsibility to implement processes by which it could detect and analyze a breach of their security systems quickly and to give prompt notice to those affected in the case of a cyberattack.

86. Defendants knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class Members and the importance of adequate security. Defendants were on notice because, on information and belief, they knew or should have known that it would be an attractive target for cyberattacks.

87. Defendants owed a duty of care to Plaintiff and Class Members whose Private Information was entrusted to them. Defendants duties included, but were not limited to, the following:

a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in their possession;

b. To protect the Private Information in their possession using reasonable and adequate security procedures and systems compliant with industry standards;

c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in their possession;

d. To employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class Members pursuant to HIPAA and the FTCA;

e. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f. To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

88. Defendants duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

89. Defendants duty also arose because Defendants are bound by industry standards to protect the confidential Private Information entrusted to it.

90. Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendants, and Defendants owed them a duty of care to not subject them to an unreasonable risk of harm.

91. Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff and Class Members' Private Information within Defendants possession.

92. Defendants, by their actions and/or omissions, breached their duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

93. Defendants, by their actions and/or omissions, breached their duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

94. Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Plaintiff and Class Members' Private Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b. Failing to adequately monitor the security of their networks and systems;

c. Failing to periodically ensure that their email system maintained reasonable data security safeguards;

d. Allowing unauthorized access to Class Members' Private Information;

e. Failing to comply with the FTCA and HIPAA;

f. Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

g. Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

95. Defendants acted with reckless disregard for the rights of Plaintiff and Class Members by failing to provide prompt and adequate individual notice of the Data Breach such that Plaintiff and Class Members could take measures to protect themselves from damages caused by the fraudulent use of the Private Information compromised in the Data Breach.

96. Defendants had a special relationship with Plaintiff and Class Members. Plaintiff and Class Members' willingness to entrust Defendants with their Private Information was predicated on the understanding that Defendants would take adequate security precautions. Moreover, only Defendants had the ability to protect their systems (and the Private Information that it stored on them) from attack.

97. Defendants breach of duties owed to Plaintiff and Class Members caused Plaintiff and Class Members' Private Information to be compromised and exfiltrated, as alleged herein.

98. As a result of Defendants ongoing failure to notify Plaintiff and Class Members regarding the Data Breach, Plaintiff and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

99. Defendants breaches of duty also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, loss of control over their Private Information, and loss of time and money to monitor their accounts for fraud.

100. As a result of Defendants negligence in breach of their duties owed to Plaintiff and Class Members, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

101. Defendants also had independent duties under state laws that required it to reasonably safeguard Plaintiff and Class Members' Private Information and promptly notify them about the Data Breach.

102. As a direct and proximate result of Defendants negligent conduct, Plaintiff and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

103. The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

104. Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

105. In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On behalf of Plaintiff and the Nationwide Class)**

106. Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

107. Pursuant to Section 5 of the FTCA, Defendants had a duty to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiff and Class Members.

108. Pursuant to HIPAA, 42 U.S.C. § 1302(d), *et seq*., Defendants had a duty to implement reasonable safeguards to protect Plaintiff and Class Members' Private Information.

109. Specifically, pursuant to HIPAA, Defendants had a duty to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without the use of a confidential process or key." *See* definition of "encryption" at 45 C.F.R. § 164.304.

110. Defendants breached their duties to Plaintiff and Class Members under the FTCA and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff and Class Members' Private Information.

111. Specifically, Defendants breached their duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA, including but not limited to proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

112. The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect PII and PHI (such as the Private Information compromised in the Data Breach). The FTC rulings and publications described above, together with the industry-standard cybersecurity measures set forth herein, form part of the basis of Defendants duty in this regard.

113. Defendants also violated the FTCA and HIPAA by failing to use reasonable measures to protect the Private Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

114. It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information, that the failure to reasonably protect and secure Plaintiff and Class

Members' Private Information in compliance with applicable laws would result in an unauthorized third-party gaining access to Defendants networks, databases, and computers that stored Plaintiff's and Class Members' unencrypted Private Information.

115. Plaintiff and Class Members are within the class of persons that the FTCA and HIPAA are intended to protect and Defendants failure to comply with both constitutes negligence *per se*.

116. Plaintiff and Class Members' Private Information constitute personal property that was stolen due to Defendants negligence, resulting in harm, injury, and damages to Plaintiff and Class Members.

117. As a direct and proximate result of Defendants negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to damages from the lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives.

118. As a direct and proximate result of Defendants negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

119. In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

**COUNT III**
**BREACH OF THIRD-PARTY BENEFICIARY CONTRACT**
**(On behalf of Plaintiff and the Nationwide Class)**

120. Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

121. Defendants entered into contracts, written or implied, with their Clients to perform services that include, but are not limited to, providing medical coding and risk adjustment services. Upon information and belief, these contracts are virtually identical between and among

Defendants and their Clients around the country whose customers and patients, including Plaintiff and Class Members, were affected by the Data Breach.

122. In exchange, Defendants agreed, in part, to implement adequate security measures to safeguard the Private Information of Plaintiff and the Class.

123. These contracts were made expressly for the benefit of Plaintiff and the Class, as Plaintiff and Class Members were the intended third-party beneficiaries of the contracts entered into between Defendants and their Clients. Defendants knew that if their were to breach these contracts with their Clients, their Clients' patients—Plaintiff and Class Members—would be harmed.

124. Defendants breached the contracts they entered into with their Clients by, among other things, failing to (i) use reasonable data security measures, (ii) implement adequate protocols and employee training sufficient to protect Plaintiff Private Information from unauthorized disclosure to third parties, and (iii) promptly and adequately detecting the Data Breach and notifying Plaintiff and Class Members thereof.

125. Plaintiff and the Class were harmed by Defendants breach of their contracts with their clients, as such breach is alleged herein, and are entitled to the losses and damages they have sustained as a direct and proximate result thereof.

126. Plaintiff and Class Members are also entitled to their costs and attorney's fees incurred in this action.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Nationwide Class)**

127. Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

128. This Count is pleaded in the alternative to Count III above.

129. Plaintiff and Class Members conferred a benefit on Defendants by permitting their healthcare providers and healthcare plans to turn over their Private Information to Defendants. Moreover, upon information and belief, Plaintiff allege that payments made by Defendants Clients

to Defendants included payment for cybersecurity protection to protect Plaintiff and Class Members' Private Information, and that those cybersecurity costs were passed on to Plaintiff and Class Members in the form of elevated prices charged by Defendants Clients for their services. Plaintiff and Class Members did not receive such protection.

130. Upon information and belief, Defendants funds their data security measures entirely from their general revenue, including from payments made to it by their Clients on behalf of Plaintiff and Class Members.

131. As such, a portion of the payments made by Plaintiff and Class Members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Defendants.

132. Defendants have retained the benefits of their unlawful conduct, including the amounts of payment received indirectly from Plaintiff and Class Members that should have been used for adequate cybersecurity practices that it failed to provide.

133. Defendants knew that Plaintiff and Class Members conferred a benefit upon it, which Defendants accepted. Defendants profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiff and Class Members' Private Information and prevented the Data Breach.

134. If Plaintiff and Class Members had known that Defendants had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendants.

135. Due to Defendants conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendants to be permitted to retain the benefit of their wrongful conduct.

136. As a direct and proximate result of Defendants conduct, Plaintiff and Class Members have suffered, and/or are at a continued, imminent risk of suffering, injury that includes but is not limited to the following: (i) actual identity theft; (ii) the loss of the opportunity to control

how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendants possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Private Information in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

137. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

138. Plaintiff and Class Members may not have an adequate remedy at law against Defendants, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## COUNT V
## DECLARATORY JUDGMENT
## (On behalf of Plaintiff and the Nationwide Class)

139. Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

140. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant

further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal laws and regulations described in this Complaint.

141. Defendants owe a duty of care to Plaintiff and Class Members, which required they to adequately secure Plaintiff and Class Members' Private Information.

142. Defendants still possess Private Information regarding Plaintiff and Class Members.

143. Plaintiff alleges that Defendants data security measures remain inadequate. Furthermore, Plaintiff continue to suffer injury as a result of the compromise of their Private Information and the risk remains that further compromises of their Private Information will occur in the future.

144. Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendants owe a legal duty to secure their Clients' patients' Private Information and to timely notify them of a data breach under the common law, HIPAA, and the FTCA;

b. Defendants existing security measures do not comply with their explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect patient Private Information; and

c. Defendants continue to breach this legal duty by failing to employ reasonable measures to secure their Clients' patients' Private Information.

145. This Court should also issue corresponding prospective injunctive relief requiring Defendants to employ adequate security protocols consistent with legal and industry standards to protect patient and customer Private Information in their possession, including the following:

a. Order Defendants to provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

b. Order that, to comply with Defendants explicit or implicit contractual obligations and duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to:

i. engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

ii. engaging third-party security auditors and internal personnel to run automated security monitoring;

iii. auditing, testing, and training their security personnel regarding any new or modified procedures;

iv. segmenting their user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendants systems;

v. conducting regular database scanning and security checks;

vi. routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

vii. meaningfully educating their Clients and their patients and customers about the threats they face with regard to the security of their Private Information, as well as the steps they should take to protect themselves.

146. If an injunction is not issued, Plaintiff will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach at Defendants. The risk of another such breach is real, immediate, and substantial. If another breach at Defendants occurs, Plaintiff will

not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

147. The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Defendants if an injunction is issued. Plaintiff will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Defendants compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Defendants have a pre-existing legal obligation to employ such measures.

148. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at Defendants, thus preventing future injury to Plaintiff, Class Members, and others whose Private Information would be further compromised.

## COUNT VI
## VIOLATION OF THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT, CIV. CODE § 56, *et seq.*
## (On Behalf of Plaintiff and the California Subclass)

149. Plaintiff restates and realleges all of the allegations stated above as if fully set forth herein.

150. Plaintiff brings this claim on behalf of herself and the California Subclass, referred to as "Class Members" in this section.

151. Plaintiff is a "patient" as defined in Cal. Civ. Code § 56.05(m), and Defendants are "a provider of health care," as defined in Cal. Civ. Code § 56.06; thus, Defendants are subject to the requirements of the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56.10(a), (d) and (e), 56.36(b), 56.101(a) and (b).

152. Furthermore, Plaintiff and Class Members, as customers of Defendants, had their individually identifiable "medical information," within the meaning of Cal. Civ. Code § 56.05(j), created, maintained, preserved, and stored on Defendants computer network, and were patients on or before the date of the Data Breach.

153. At all relevant times, Defendants were providers of healthcare because they had the "purpose of maintaining medical information to make the information available to the individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage her information, or for the diagnosis or treatment of the individual." Cal. Civ. Code § 56.06(a).

154. As a provider of health care, Defendants were required by the CMIA to ensure that medical information regarding patients is not disclosed or disseminated or released without patient's authorization, and to protect and preserve the confidentiality of the medical information regarding a patient, under Civil Code §§ 56.06, 56.10, 56.13, 56.20, 56.245, 56.26, 56.35, 56.36, and 56.101.

155. "Every provider of healthcare who… creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein." Cal. Civ. Code § 56.101. Any provider of healthcare who "negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36. *Id.*

156. As a provider of provider of healthcare, Defendants negligently created, maintained, preserved, stored, and then exposed Plaintiff's and Class Members' individually identifiable "medical information," within the meaning of Cal. Civ. Code 56.05(j). As set forth above, Defendants stored medical information on an insufficiently secure computer system and so failed to exercise reasonable care in the creation, maintenance, preservation, and storage of this medical information. Defendants negligence directly resulted in the exfiltration of patient PII and PHI in the Data Breach. On information and belief, this patient information was stolen, accessed, and viewed by unauthorized persons, so patient confidentiality was not preserved.

157. Defendants negligence resulted in the release of individually identifiable medical information pertaining to Plaintiff and Class Members to unauthorized persons and the breach of the confidentiality of that information. Defendants negligent failure to maintain, preserve, store,

abandon, destroy, and/or dispose of Plaintiff and Class Members' medical information in a manner that preserved the confidentiality of the information contained therein, in violation of Cal. Civ. Code §§ 56.06 and 56.101(a).

158. Defendants also violated Sections 56.06 and 56.101 of the CMIA, which prohibits the negligent creation, maintenance, preservation, storage, abandonment, destruction or disposal of confidential personal medical information.

159. Section 56.10(a) of the CMIA provides that "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization."

160. Section 56.101(a) of the CMIA provides that "[e]very provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36." Section 56.101(b)(1)(A) further provides that "[a]n electronic health record system or electronic medical record system . . . [p]rotect and preserve the integrity of electronic medical information."

161. Section 56.35 of the CMIA provides that "[i]n addition to any other remedies available at law, a patient whose medical information has been used or disclosed in violation of Section 56.10, 56.104, 56.107, or 56.20 or subdivision (a) of Section 56.26 and who has sustained economic loss or personal injury therefrom may recover compensatory damages, punitive damages not to exceed three thousand dollars ($3,000), attorney's fees not to exceed one thousand dollars ($1,000), and the costs of litigation."

162. Section 56.36(b) of the CMIA provides the following:

> In addition to any other remedies available at law, an individual may bring any action against a person or entity who has negligently

> released confidential information or records concerning him or her in violation of this part, for either or both of the following:
>
> (1) Except as provided in subdivision (e), nominal damages of one thousand dollars ($1,000). In order to recover under this paragraph, it is not necessary that the plaintiff suffered or was threatened with actual damages
>
> (2) The amount of actual damages, if any, sustained by the patient.

163. Defendants have misused, disclosed, and/or otherwise allowed third parties to access and view Plaintiff's and Class Members' personal medical information without their written authorization in violation of Civil Code §§ 56.10, 56.11, 56.13, 56.26, and 56.101.

164. Plaintiff and Class Members' medical information was accessed, removed, and actually viewed by hackers and other unauthorized parties during and following the Data Breach.

165. Plaintiff and Class Members' medical information that was the subject of the Data Breach included "electronic medical records" or "electronic health records" as referenced by Civil Code § 56.101(c) and defined by 42 U.S.C. § 17921(5).

166. Defendants computer systems did not protect and preserve the integrity of electronic medical information in violation of Cal. Civ. Code § 56.101(b)(1)(A). As a direct and proximate result of Defendants above-noted wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, and violation of the CMIA, Plaintiff and the Class Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, inter alia, (a) present, imminent, immediate and continuing increased risk of identity theft, identity fraud and medical fraud—risks justifying expenditures for protective and remedial services for which they are entitled to compensation, (b) invasion of privacy, (c) breach of the confidentiality of the PHI, (d) statutory damages under the CMIA, (e) deprivation of the value of their PHI, for which there is well-established national and international markets, and/or (f) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

167. Defendants violated the CMIA by (1) failing to implement reasonable administrative, physical and technical safeguards to protect, secure and prevent the unauthorized

access to, and acquisition of, Plaintiff's and Class Members' personal medical information; (2) failing to implement reasonable data security measures, such as intrusion detection processes that detect data breaches in a timely manner, to protect and secure Plaintiff's and Class Members' personal medical information; (3) failing to use reasonable authentication procedures to track Plaintiff's and Class Members' personal medical information in case of a security breach; and (4) allowing undetected and unauthorized access to servers, networks and systems where Plaintiff's and Class Members' personal medical information was kept, all in violation of the CMIA.

168. Defendants further violated the CMIA by affirmatively sharing and disclosing, and providing third parties with access to Plaintiff's and Class Members' medical information.

169. As a direct and proximate result of Defendants wrongful actions, inaction, omission, and want of ordinary care that directly and proximately caused the release of Plaintiff and Class Members' Private Information, Plaintiff and Class Members' personal medical information was viewed by, released to, and disclosed to third parties without Plaintiff and Class Members' written authorization.

170. As a result of the Data Breach, unauthorized parties obtained personal medical information, viewed it, and now have it available to them to sell to other bad actors, including on the dark web, post the information on the dark web or otherwise misuse the information.

171. As a further result of the Data Breach, the confidential nature of Plaintiff's and Class Members' medical information was breached as a result of Defendants negligence. Specifically, Defendants knowingly allowed and affirmatively acted in a manner that actually allowed unauthorized parties to access and view Plaintiff's and Class Members' Private Information, which was viewed and used when the unauthorized parties engaged in the above-described fraudulent activity.

172. Defendants negligent failure to maintain, preserve, store, abandon, destroy, and/or dispose of Plaintiff's and Class Members' medical information in a manner that preserved the confidentiality of the information contained therein violated the CMIA.

173. Defendants failure to implement adequate data security measures to protect the PHI of Plaintiff and Class Members was a substantial factor in allowing unauthorized parties to access Defendants computer systems and acquire the PHI of Plaintiff and California Subclass Members.

174. As a direct and proximate result of Defendants violation of the CMIA, Defendants allowed the PHI of Plaintiff and Class Members to (a) escape and spread from its normal place of storage through unauthorized disclosure or release; and (b) be accessed and acquired by unauthorized parties in order to, view, mine, exploit, use, and/or profit from their personal medical information, thereby breaching the confidentiality of their personal medical information. Plaintiff and Class Members have accordingly sustained and will continue to sustain actual damages as set forth above.

175. As a direct and proximate result of Defendants wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff's and Class Members' personal medical information was viewed by, released to, and disclosed to third parties without Plaintiff's and Class Members' written authorization.

176. Plaintiff and Class Members were injured and have suffered damages, as described above, from Defendants illegal and unauthorized disclosure and negligent release of their medical information in violation of Cal. Civ. Code §§ 56.10 and 56.101, and Plaintiff and Class Members are entitled to (i) actual damages, (ii) nominal damages of $1,000 per individual, (iii) punitive damages of up to $3,000 per individual, and (iv) attorneys' fees, litigation expenses, and court costs under California Civil Code § 56.35 and 56.36.

**COUNT VII**
**Violation Of the California Consumer Privacy Act ("CCPA")**
**Cal. Civil Code Sec. 1798.150, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

177. Plaintiff restates and realleges all of the allegations stated above as if fully set forth herein.

178. This claim is alleged on behalf of Plaintiff and on behalf of the California Subclass (referred to as "California Subclass Members" throughout this claim).

179. The California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150(a), creates a private cause of action for violations of the CCPA.

180. Section 1798.150(a) specifically provides:

> Any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following:
>
> i. To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.
> ii. Injunctive or declaratory relief.
> iii. Any other relief that court deems proper.

181. Defendants are a "business" under § 1798.140(b) in that they are corporations organized for profit or financial benefit of their shareholders or other owners, with gross revenue in excess of $25 million.

182. Plaintiff and California Subclass Members are covered "consumers" under § 1798.140(g) in that they are natural persons who are California residents.

183. The personal information of Plaintiff and the California Subclass Members at issue in this lawsuit constitutes "personal information" under § 1798.150(a) and 1798.81.5, in that the personal information Defendants collect, and which was impacted by the cybersecurity attack includes an individual's PII and/or PHI.

184. Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard the California Subclass Members' personal information and that the risk of a data breach or theft was highly likely. Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature of

the information to protect the personal information of Plaintiff and the California Subclass Members. Specifically, Defendants subjected Plaintiff's and the California Subclass Members' nonencrypted and nonredacted personal information to an unauthorized access and exfiltration, theft, or disclosure as a result of the Defendants violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

185. As a direct and proximate result of Defendants violation of their duty, the unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and California Subclass Members' personal information included exfiltration, theft, or disclosure through Defendants servers, systems, and website, and/or the dark web, where hackers further disclosed the personal identifying information alleged herein.

186. As a direct and proximate result of Defendants acts, Plaintiff and the California Subclass Members were injured and lost money or property, including but not limited to the loss of Plaintiff's and California Subclass Members' legally protected interest in the confidentiality and privacy of their personal information, stress, fear, and anxiety, nominal damages, and additional losses described above.

187. Section 1798.150(b) specifically provides that "[n]o [prefiling] notice shall be required prior to an individual consumer initiating an action solely for actual pecuniary damages."

188. Accordingly, Plaintiff and the California Subclass Members, by way of this complaint seek actual pecuniary damages suffered as a result of Defendants violations described herein.

189. Plaintiff provided Defendant CareCloud with written notice of the violations of the CCPA, pursuant to Civil Code § 1798.150(b)(1), on April 1, 2026, and provided written notice to Defendant CareCloud Health on April 29, 2026. If Defendants fail to respond or have not cured or is unable to cure the violation within 30 days thereof, Plaintiff will amend this Complaint to seek all relief available under the CCPA including damages to be measured as the greater of actual

damages or statutory damages in an amount up to seven hundred and fifty dollars ($750) per consumer per incident. See Cal. Civ. Code § 1798.150(a)(1)(A) & (b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, and the Class described above, seek the following relief:

a. An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Classes requested herein;

b. Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d. An order instructing Defendants to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e. An order requiring Defendants to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g. An award of such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: April 29, 2026, Respectfully,

By: */s/: Mariya Weekes*

Mariya Weekes (FBN 56299)
**MILBERG, PLLC**
333 SE 2nd Avenue, Suite 2000
Miami, FL 33131
Tel: (786) 206-9057
mweekes@milberg.com

Jeff Ostrow (FBN 121452)
**KOPELOWITZ OSTROW P.A**.
One West Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
ostrow@kolawyers.com

James E. Cecchi (*pro hac vice* forthcoming)
**CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C.**
5 Becker Farm Rd.
Roseland, NJ 07068
(973) 994-1700
jcecchi@carellabyrne.com

*Attorneys for Plaintiff and the Proposed Class*